Robert M. EDELIN, Appellant,

v.

UNITED STATES, Appellee.

No. 4077.

District of Columbia Court of Appeals.

Argued Dec. 19, 1966.

Decided March 20, 1967.

**396**

John D. Hawke, Jr., Washington, D. C., for appellant.

Edward T. Miller, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge:

In October 1964 appellant was arrested for false pretenses. A search warrant was issued commanding police officers to search appellant's room and to seize a check writing machine and an undetermined number of blank checks. During the search the officers located nothing described in the warrant but did find, when an officer lifted a pillow from appellant's bed, recognizable narcotics paraphernalia—a hypo

dermic needle and syringe, a bent spoon, usable as a narcotics "cooker," and tissue paper, all wrapped in a stocking. These were seized and later placed under chemical analysis, which revealed microscopic traces of heroin. A new information was then filed against appellant charging unlawful possession of heroin in violation of D.C. Code § 33–402(a) (1961). After trial by the court without a jury, appellant was found guilty. His motions to dismiss, to suppress the evidence seized and for judgment of acquittal were all denied. This appeal ensued.

### I

Appellant first contends that the narcotics paraphernalia and the testimony relating to heroin traces should have been suppressed as the fruits of an illegal seizure. He does not question the validity of the warrant or the search thereunder, but rather the validity of the seizure of narcotics paraphernalia under a warrant which described only a check writing machine and a number of checks.

The Fourth Amendment provides that warrants must describe in some particularity "the place to be searched, and the persons or things to be seized." It has long been held that there are exceptions which allow the lawful seizure of articles not described in the warrant. The Supreme Court has considered as exceptions objects

> "including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime." Harris v. United States, 331 U. S. 145, 154, 67 S.Ct. 1098, 1103, 91 L.Ed. 1399 (1947). See also Johnson v. United States, 110 U.S.App.D.C. 351, 293 F.2d 539 (1961), cert. denied, 375 U.S. 888, 84 S.Ct. 167, 11 L.Ed.2d 118 (1963);

Palmer v. United States, 92 U.S.App. D.C. 103, 203 F.2d 66 (1953); Hunt v. United States, D.C.Mun.App., 171 A.2d 515 (1961).

Narcotics paraphernalia is not the fruit of a crime, a weapon, or property the mere possession of which constitutes a crime. It is, however, the means and instrumentality by which narcotics may be illegally used. While the articles seized from appellant's room might not compel such a finding if found singly or separately, when hidden together as an apparent user's "kit," the paraphernalia is clearly the means by which a crime may be committed.[1] It is immaterial that the search warrant did not pertain to a crime related to the articles seized. It is sufficient if the articles seized are instrumentalities of crime. We find, therefore, that the paraphernalia was validly seized and appellant's motion to suppress properly denied.

### II

Appellant's second allegation of error is that the stipulated testimony of the Government chemist that microscopic chemical analysis of the paraphernalia disclosed "traces" of heroin was insufficient to show illegal possession of a narcotic drug under § 33–402(a). He reasons that the evil sought to be controlled by the statute is the use of narcotic drugs or their sale or transfer for ultimate use. In controlling the eventual harm, the proscription of possession has been called "the penalized state of preparation." Hall, General Principles of Criminal Law 584–85 (2d ed. 1960). Where the amount of narcotics possessed is an amount which can be used as a narcotic, the probability of use is very high and the protection of society demands that the possession be proscribed. Appellant argues, however, that where the amount is microscopic or infinitesimal and in fact unusable as a narcotic, the possibility of unlawful

---

1. In Murgia v. United States, 285 F.2d 14 (9th Cir. 1960), the court described a similar "kit"—a hypodermic needle, eyedropper, and burned aluminum cap wrapped in a dark cloth—as "equipment used ordinarily for the taking of heroin, and for that purpose only." Id. at 16.

sale or use does not exist, and that proscription of possession under these circumstances is inconsistent with the rationale of the statutory scheme of narcotics control. Appellant contends that the statute should be interpreted as requiring proof of possession of at least a usuable quantity of narcotics.

This particular question has not been presented to or passed upon by any appellate court in the District of Columbia.[2] However, at least four other jurisdictions have reached the precise issue now before us. The first holding on the issue appears to be Greer v. State, 163 Tex.Cr.R. 377, 292 S.W.2d 122 (1956), where chemical analysis of a piece of wet cotton found in a bottle cap indicated a trace of heroin. The court found this an insufficient quantity to authorize conviction. A year later the Greer decision was reaffirmed in Pelham v. State, 164 Tex.Cr.App. 226, 298 S.W.2d 171 (1957), where, in reversing a conviction for illegal possession of marijuana, the court concluded

> "that the reasonable construction and interpretation to be applied here is that the legislature intended that to constitute the unlawful act of possessing marijuana there must be possessed an amount sufficient to be applied to the use commonly made thereof." 298 S.W.2d at 173. See also Gonzalez v. State, 169 Tex.Cr. 48, 331 S.W.2d 327 (1960).

After much litigation on the point, California has combined the issue of quantity with the issue of *knowledgeable* possession, stating that "the possession of a minute crystalline residue of narcotic useless for either sale or consumption * * * does not constitute sufficient evidence in itself to sustain conviction." People v. Leal, 64 Cal.2d 504, 50 Cal.Rptr. 777, 782, 413 P.2d 665, 670 (1966 en banc).

In State v. Moreno, 92 Ariz. 116, 374 P.2d 872 (1962 en banc), the Supreme Court of Arizona applied the usability test in affirming a conviction under a statute virtually identical to § 33–402(a). In *Moreno* heroin residue was found on four wads of cotton. Testimony indicated that the wads were collected and saved and could be processed to provide enough narcotics for a "booster shot" at a time when the user could not obtain larger quantities of heroin. The injection, although weak, was sufficient to tide the addict over. The court stated:

> "We believe the correct rule to be applied under a statute such as ours is that where the amount of a narcotic is so small as to require a chemical analysis to detect its presence, the quantity is sufficient if useable under the known practices of narcotic addicts. We hold that only in those cases where the amount is incapable of being put to any effective use will the evidence be insufficient to support a conviction." 376 P.2d at 875.

Only Wisconsin has held contrary when faced with unusable, microscopic traces. State v. Dodd, 28 Wis.2d 643, 137 N.W.2d 465 (1965). *Dodd,* while rejecting *Moreno* and the Texas cases, is based in large part upon California cases supplanted by People v. Leal, supra.

■ The legislative history of § 33–402 (a) reveals nothing which commands a holding contrary to State v. Moreno. The Government contends that such a rule would abrogate D.C.Code § 33–421 (1961) which exempts the Government from the burden of negativing any exception to § 33–402(a) and places that burden upon the defendant. We do not agree. Part of the Government's prima facie case is to prove that a substance in defendant's possession allegedly in violation of § 33–402(a) is proscribed as a narcotic drug under the statutory scheme of narcotics control. If this substance cannot be sold, if it cannot be ad-

---

2. A similar argument was raised in Briscoe v. United States, 119 U.S.App.D.C. 41, 336 F.2d 960 (1964), but the issue was not reached in that the point was not properly preserved for appeal.

ministered or dispensed, common sense dictates that it is not such a narcotic as contemplated by Congress to be a danger to society, the possession of which is proscribed.

■ We adopt the rationale of State v. Moreno and hold that where there is only a trace of a substance, a chemical constituent not quantitatively determined because of minuteness, and there is no additional proof of its usability as a narcotic, there can be no conviction under § 33–402(a).

Reversed with directions to enter an acquittal.